# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

---

No. 02-1921

---

| | | |
|---|---|---|
| Ron Krein and Jeanne Krein, | * | |
| | * | |
| Plaintiffs - Appellants, | * | |
| | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of North Dakota. |
| DBA Corporation, | * | |
| | * | [PUBLISHED] |
| Defendant - Appellee. | * | |

---

Submitted: December 11, 2002

Filed: April 28, 2003

---

Before WOLLMAN, HEANEY, and MELLOY, Circuit Judges.

---

MELLOY, Circuit Judge.

In this appeal, the appellants contend that the district court[1] erred in granting the appellee's motion for summary judgment by concluding that the appellants' claims were barred by North Dakota's two-year statute of limitations for professional negligence. Because the district court applied the proper statute of limitations and correctly determined that it should not be tolled, we affirm.

---

[1]The Honorable Patrick A. Conmy, Senior United States District Judge for the District of North Dakota.

## I. Background.

This lawsuit arises out of an accident that occurred at Falkirk Mining Corporation ("Falkirk") on November 5, 1997, when Mr. Krein, a Falkirk employee, suffered serious injuries. At the time of the accident, Mr. Krein was inspecting a conveyor belt system when a large piece of coal fell off of the elevated system and through an open window in his pickup truck, hitting him in the head.

The defendant, DBA Corporation, is a wholly owned subsidiary of Laird Inc., and the successor of Cable Belt Conveyors, Inc. ("Cable Belt USA"). Cable Belt USA was hired by Falkirk on October 23, 1991, to provide engineering and design services for the installation of the conveyor belt system at Falkirk's facilities near Washburn, North Dakota.

The Kreins filed suit against DBA Corporation on October 26, 2000, in Burleigh County District Court in North Dakota and requested damages for both Mr. Krein's injuries and Mrs. Krein's loss of consortium, companionship, and services. The Kreins' complaint alleged that Cable Belt USA was negligent in the installation of the system. On December 1, 2000, DBA Corporation removed the suit to federal court on diversity of citizenship grounds.[2]

After the Kreins made several amendments to their initial complaint and conducted extensive discovery, DBA Corporation moved for summary judgment on all claims. DBA Corporation claimed that the Kreins had only alleged claims for professional, not ordinary negligence. Thus, their claims were subject to a two-year statute of limitations which had expired. Compare N.D. Cent. Code § 28-01-18(3)

---

[2]The plaintiffs are citizens of North Dakota. The defendant is a subsidiary of Laird, Inc., a Delaware Corporation with its principal place of business in North Carolina.

(providing a two-year statute of limitations for malpractice), <u>with</u> N.D. Cent. Code §28-01-16(5) (providing a six-year statute of limitation for ordinary negligence). The district court agreed and granted DBA Corporation's motion for summary judgment.

On appeal, the Kreins contend that the district court erred in determining that their complaint only alleged claims for professional negligence. The Kreins argue that the complaint also raised claims of ordinary negligence, and should have been subject to a six-year statute of limitations. Alternatively, the Kreins argue that even if the two-year statute of limitations for professional negligence applied, it was tolled because of Mr. Krein's injuries or by North Dakota's discovery rule.

## II. Standard of Review.

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 (c). "We review the district court's grant of summary judgment de novo viewing the record in the light most favorable to the non-moving party and giving the non-moving party the benefit of all reasonable inferences supported by the record." <u>Eddings v. City of Hot Springs</u>, ____ F.3d _____, 2003 WL 1086410, *2 (8th Cir. 2003) (citing <u>ACT, Inc. v. Sylvan Learning Sys., Inc.</u>, 296 F.3d 657, 661-62 (8th Cir. 2002)).

Although summary judgment is not proper where disputes exist on issues of material fact, a non-movant cannot simply rely on assertions in the pleadings to survive a motion for summary judgment. Once the moving party has met its burden of showing "the absence of a genuine issue of material fact and an entitlement to judgment as a matter of law[,] . . . the non-moving party may not rest on the allegations of his pleadings, but must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." <u>Stone Motor Co. v.</u>

General Motors, Corp. 293 F. 3d 456, 465 (8th Cir. 2002) (internal citations omitted) (citing Fed. R. Civ. P. 56(e))

## III. Negligence and Tolling Claims.

### A. Negligence.

North Dakota provides a six-year statute of limitations for ordinary negligence. N.D. Cent. Code § 28-01-16(5). However, when a plaintiff brings an action for professional negligence, the statute of limitations is shortened to a period of two-years. N.D. Cent. Code § 28-01-18(3). In interpreting North Dakota's statute of limitations for professional negligence, the North Dakota Supreme Court has determined that the statute of limitations applies to engineers. Sime v. Tvenge Assoc. Architects & Planners, P.C., 488 N.W.2d 606, 609 (N.D. 1992); see also Jilek v. Berger Electric, Inc., 441 N.W.2d 660, 661-63 (N.D. 1989) (discussing the scope of N.D. Cent. Code § 28-01-18(3)'s).

The Kreins offer several arguments for why North Dakota's statute of limitations for professional negligence should not apply. First, they argue that their complaint sufficiently alleges claims for ordinary negligence. They point to Paragraph 5 of their complaint that states:

> Cable Belt performed its duties in a negligent and careless manner by, among other things, engineering and designing the system such that chunks of coal could fall or fly off the cable belt conveyor system while in use; by failing to provide for sufficient barriers along the system; and by otherwise providing an unsafe system.

The Kreins argue that inclusion of the phrase "among other things" broadens their claim beyond professional negligence. We disagree. As we have previously stated, "[a] case founded on speculation or suspicion is insufficient to survive a motion for

4

summary judgment." Nat'l Bank of Commerce, of El Dorado, Arkansas v. Dow Chem. Co., 165 F.3d 602, 610 (8th Cir. 1999). The mere inclusion of the phrase "among other things," does not convert a professional negligence claim into a claim for ordinary negligence under North Dakota law. See Bottineau Farmers Elevator v. Woodward-Clyde Consultants, 963 F.2d 1064, 1070 (8th Cir. 1992) (concluding that "engineering services were 'clearly professional' within the meaning of the malpractice statute of limitations").

The Kreins argue that some aspects of Cable Belt USA's performances cannot be labeled as professional services. First, they argue that the services Cable Belt USA provided were not "engineering" services because they were performed by non-degree employees. Specifically, the Kreins point to Cable Belt USA's on-site supervision and training during the conveyor belt systems installation. However, the fact that non-degree employees were involved in providing these services does not convert the Kreins' complaint from one raising issues of professional negligence into one for ordinary negligence. As the North Dakota Supreme Court stated in Sime, "[i]t is the 'actual nature of the action' or the actual 'nature of the subject matter' which is determinative." 488 N.W.2d at 609 (quoting Johnson v. Haugland, 303 N.W.2d 533, 538 (N.D. 1981)). In this case, Cable Belt USA contracted with Falkirk to provide engineering and design services. Simply because Cable Belt used non-degree employees to accomplish some of the tasks does not convert this action from one involving professional negligence to one involving ordinary negligence.

The Kreins also claim that Cable Belt USA did not provide professional services because all "engineering" work was subcontracted to Cable Belt, Limited UK ("Cable Belt UK"), a sister company. Assuming this to be true, we find the North Dakota Supreme Court's reasoning in Sime instructive on this issue. In that case, the court determined that even though some professional services were subcontracted, the statute of limitations for professional negligence applied. 488 N.W.2d at 607 (discussing the two parties involved in providing the services). Although that case

involved only part of the services being subcontracted, we see no reason the same rationale should not apply here. Additionally, we note that the claim all services were subcontracted is somewhat contradictory to the Kreins' assertion that Cable Belt USA provided on-site supervision and training during the system's installation.

In sum, having reviewed the record as a whole and considered all facts and inferences in the light most favorable to the Kreins, we conclude that the district court properly determined that these allegations did not support a cause of action for ordinary negligence. We believe that the acts complained of involved special skills not possessed by lay persons. See Sime, 488 N.W.2d at 609 ("[t]he distinction between ordinary negligence and malpractice turns on whether the acts or ommissions complained of involve a matter of . . . science or art requiring special skills not ordinarily possessed by lay persons or whether the conduct complained of can instead be assessed on the basis of common everyday experience."

We note that having determined that Mr. Krein's claims are based on allegations of professional negligence, Mrs. Krein's claims for loss of consortium, companionship, and services also fall within the two-year statute of limitations. In Sime, the North Dakota Supreme Court addressed this very issue stating "the two-year statute of limitations for malpractice actions applies to loss of consortium claims arising out of alleged professional negligence. Although a claim for loss of consortium may well be separate and distinct, it, nevertheless, derives from the other spouse's injury." 486 N.W.2d at 611 (footnote omitted).

## B. Tolling.

The Kreins contend that even if they only raised claims for professional negligence, the statute of limitations should have been tolled because of Mr Krein's injuries. The district court determined that the statute of limitations should not be tolled and that it began to run on the date Mr. Krein was injured, November 5, 1997.

6

As a result, since the claim was filed in November 2000, it was barred by North Dakota's two-year statute of limitations.[3]

N.D. Cent. Code § 28-01-25(2) provides for the tolling of a statute of limitations for professional negligence actions when a person is, inter alia, "[i]nsane . . . at the time the claim for relief accrues." The North Dakota Supreme Court clarified the meaning of "insane" in BASF Corp. v. Symington:

> California, a state having a similar disability statute, . . . has construed the term "insane" to mean a person having an unsound mind or having a mental condition rendering that person incapable of comprehending legal rights. We agree with California that this is an appropriate and useful definition of the term "insane for the use under these limitations statutes. Herein, we use the phrase "mentally incompetent" interchangeably with the term insanity.

512 N.W.2d 692, 695 n.2 (N.D. 1994) (internal citations omitted). North Dakota has also adopted a discovery rule for medical malpractice cases to determine the date when the statute of limitations begins to run. The discovery rule requires that in order for a statute of limitations to begin, the plaintiff must know, or have been able to determine through reasonable diligence, "(1) the injury, (2) its cause, and (3) the defendant's possible negligence." Schanilec v. Grand Forks Clinic, Ltd., 599 N.W.2d 235, 255-56 (N.D. 1999). We do not believe that either the discovery rule or the tolling statute apply to extend the statute of limitations for Mr. Krein.[4]

---

[3]There is some confusion in the record about whether this complaint was filed in October, November or December of 2000. However, this is irrelevant to this appeal because all of these dates fall after the two-year statute of limitations expired.

[4]Because we have determined that Mr. Krien's claims are not tolled, we do not need to address whether Mrs. Krein's derivative claims would also be tolled.

7

Mr. Krein provided an affidavit from Dr. Swenson, a clinical psychologist, to support that he was sufficiently incompetent to toll the statute of limitations. Although that affidavit indicates that Mr. Krein suffered a serious injury, it does not state that he was unable to pursue legal claims with the representation of counsel. See Affidavit, Para. 4 (stating that the injury resulted in Mr. Krein "having a 45% impairment of the whole person); Id., Para. 7 ("he lacked the executive function cognitive skills to determine whether he may have a claim against a particular defendant without assistance from others) (emphasis added). In fact, on other occasions immediately after the accident, Mr. Krein asserted his legal rights. The district court noted several of these instances that indicate Mr. Krein was able to assert his legal rights. These include:

> correspondence between Mr. Krein and the North Dakota Workers Compensation Bureau (November 1997), correspondence between Mr. Krein and UNUM Life Insurance Company of America, Mr. Krein's application for Social Security disability benefits (dated May 11, 1998), Mr. Krein's bankruptcy petition (Dated September 27, 1999), Mr. Krein's tax returns for 1997-1999, and correspondence [between] Falkirk and Mr. Krein (dated October 5, 1999) regarding the accident.

Krein v. DBA Corp., Memorandum and Order, page 8 (March 22, 2002). Based on the lack of evidence presented by Mr. Krein, we are convinced that there is not a material dispute that would result in a reasonable jury concluding that the statute of limitations should be tolled. See Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986) (discussing this requirement for determining whether summary judgment is appropriate).

We also disagree that Mr. Krein was unable to discover his injury. As the North Dakota Supreme Court stated in Schanilec, "[t]o trigger the running of the statute of limitations [a plaintiff] need not fully appreciate the potential liability or even be convinced of his injury; he need only know enough to be on notice of a

8

potential claim." 599 N.W.2d 235, 258 (1999). Mr. Krein's case is significantly different from a medical malpractice case where a patient may not immediately know that the pain in his stomach was caused by a surgeon inadvertently forgetting to remove a sponge or medical instrument. Mr. Krein certainly knew he had been injured by a piece of coal. Additionally, shortly after the incident he asserted many legal rights that arose because of this accident. The fact that he may have been unable to determine the exact party responsible for his injuries or claims without legal counsel does not prevent the statute of limitations from beginning to run. The court in Schanilec referred to what a defendant could have discovered "with reasonable diligence." Id. Given these facts, we conclude that the discovery statute does apply and the date the statute of limitations began to run for Mr. Krein's complaint was the date of the accident.

We conclude that the district court correctly dismissed the Kreins' claims. They did not bring their claims before the relevant statute of limitations had expired. As a result, the district court's decision granting the motion for summary judgment in favor of DBA Corporation and dismissing the Kreins' complaint is affirmed.

A true copy.

Attest:

Clerk, U.S. Court of Appeals, Eighth Circuit.

9